

EOD
04/25/2008

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **MARY E. LONG** | § | Case No. 07-10728 |
| | § | |
| Debtor | § | Chapter 13 |

## MEMORANDUM OF DECISION

This matter is before the Court to consider confirmation of the Debtor's Chapter 13 Plan proposed by Mary E. Long (the "Debtor"), the debtor in the above-referenced Chapter 13 case. Ronald E. Stadtmueller, Chapter 13 Trustee, objected to the confirmation of the Plan on the ground that the Debtor is not applying all of her projected disposable income in contravention of 11 U.S.C. §1325(b)(1)(B), as that statute was amended by the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Specifically, the Trustee contends that one particular monthly payment pertaining to collateral that the Debtor has already surrendered was improperly included in line 47 of Form 22C, thereby rendering erroneous her disposable income calculation on line 58 of that form, and that the Debtor's proposed plan fails to provide the minimum dividend to unsecured creditors required under a correct calculation of disposable income under §1325(b)(2) of the Bankruptcy Code.[1] At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

---

[1] Other confirmation objections raised by the Trustee were resolved prior to the hearing.

[2] This Court has jurisdiction to consider confirmation of the plan pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

**Background**

The relevant facts are established in this case by the referenced pleadings and the parties elected to submit the case to the Court without the presentation of additional evidence. The Debtor, Mary Long, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. In the course of restructuring her financial affairs, she elected to surrender a 2006 Dodge Durango SUV to the respective lienholder, Wells Fargo Bank, and Wells Fargo has subsequently obtained a termination of the automatic stay in order to proceed with the exercise of its foreclosure rights against the vehicle.[3] The Debtor is proposing to pay the sum of $210 per month for the first 4 months of the plan and $300 per month for the remaining 56 months.[4] That proposed plan addresses the treatment of certain claims secured by other personal property and also proposes to pay approximately $2,862.40 to unsecured creditors, which would result in a projected dividend of 8.36%.[5]

It is uncontested that the Debtor's current monthly income of $6,315.50 under 11 U.S.C. §101(10A), when extrapolated into an annual amount, exceeds the median family income for two-person households in this state.[6] Thus, the Debtor was required to complete the entirety of Form 22C, thereby incorporating the standards derived from

---

[3] See *Order Granting Motion for Relief filed by Wells Fargo Bank, N.A., Wells Fargo Auto Finance* [dkt #9].

[4] See *Debtor's Chapter 13 Plan* [dkt #2].

[5] The Debtor estimated that her general unsecured indebtedness would total $34,253.42.

[6] The current median family income for a two-member household in Texas is $48,849.

§707(b)(2) into the computation of her disposable income pursuant to §1325(b)(2). The Debtor's Form 22C contained a $2,309.93 deduction for debt payments itemized on line 47 of Part IV, Subpart C.[7] Included among those debts contributing to that aggregate deduction was the $937 average monthly payment made to service the note secured by the 2006 Dodge Durango — a payment pertaining to collateral which the Debtor has now surrendered and which will no longer be made during the pendency of the Debtor's Chapter 13 plan. With those deductions included in the calculation, the Debtor's monthly disposable income under 1325(b)(2) computes to <$481.23>.

The Trustee asserts that a deduction for a monthly debt payment pertaining to collateral which the Debtor has now surrendered should not be permitted on line 47. The Trustee thus bases his disposable income objection upon a corrected calculation which omits that deduction and accordingly produces on line 58 a monthly disposable income figure of $455.77.[8] Thus, the Trustee contends that the Debtors must tender a minimum of $27,346.20 to unsecured creditors (a projected dividend of 79.83%) and that her failure to propose a plan to provide such a dividend to unsecured creditors in this case precludes confirmation.

---

[7] See *Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income* [dkt #1].

[8] See *Trustee's Confirmation Report, Witness & Exhibit List* [dkt #11].

**Discussion**

In the context of considering confirmation of a Chapter 13 plan proposed by a debtor who is not engaged in business, 11 U.S.C. §1325(b) now provides, in relevant part, that:

> (b)(1) [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
> (A)  the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B)  the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
> (2)  For purposes of this subsection, "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended —
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; . . .[9]

Because the Debtor's current monthly income exceeds this state's median family income

---

[9] If a debtor is engaged in business, §1325(b)(2)(B) also deletes from "disposable income" any income which must be expended "for the payment of expenditures necessary for the continuation, preservation, and operation of such business."

for a comparable household,[10] the provisions of §1325(b)(3) are invoked:

> (3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—
> 
> > (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
> > (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
> > (C) in the case of a debtor in household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

The imposition of the §707(b)(2) standards is accomplished through a debtor's completion of Official Form 22C.

At first glance, the question as to whether a Chapter 13 debtor may deduct on line 47 of Form 22C a secured debt payment which she will no longer make in the future due to the surrender of the collateral appears to require little contemplation. The disposable income test as imposed by §1325(b)(2) authorizes only the subtraction of "amounts reasonably necessary *to be expended*. . . ."[11] The language expressed in future tense would create in the mind of any reasonable person an image of a payment that is to be

---

[10] *See supra* note 6 and the text to which it relates.

[11] 11 U.S.C. §1325(b)(2) (emphasis added).

made in the future. The beginning of that future period is defined by the precise moment at which an obligation to tender projected disposable income can be imposed upon a Chapter 13 debtor, i.e. ". . . on the date that the first payment is due under the plan."[12] Section 1326(a)(1) now sets that initial due date as "30 days after the date of the filing of the plan or the order for relief, whichever is earlier . . . ," unless the Court orders otherwise.[13] So it would seem that any secured debt payment which will no longer be made in the future due to the surrender of the collateral securing its payment would not be an "amount reasonably necessary to be expended for the maintenance or support of the debtor."

However, in imposing the means test standards through §1325(b)(3) of the Bankruptcy Code in an apparent effort to limit the discretion of bankruptcy courts to determine what amounts can possibly be subtracted in the disposable income calculation, Congress has unwittingly added greater uncertainty to the determination. Specifically, it is the §1325(b)(3) directive that reasonably necessary expenses "*shall be determined in accordance with*" §707(b)(2) which is proving troublesome to bankruptcy courts across the country.[14] A number of courts have interpreted that phrase to mean that the allowable

---

[12] 11 U.S.C. §1325(b)(1)(B).

[13] 11 U.S.C. §1326(a)(1).

[14] Bankruptcy court decisions interpreting the new Chapter 13 confirmation process are considerably splintered and not easily categorized. The "plain" language of the statute is obviously subject to a number of rational statutory interpretations reached in good faith. Though the Court has reviewed a considerable number of the written opinions in this area, it seems rather pointless to try to keep a running tab on an ever-changing scoreboard, particularly in light of the truth expressed by one insightful court that "statutory construction is not a matter of plebecite." *In re Meek*, 370 B.R. 294, 301 (Bankr. D. Idaho

expenditures encompassed by the phrase "to be expended" are absolutely defined by the applicable numbers derived from the application of the §707(b) standards without any reference to the actual expenditures of a debtor in a Chapter 13 case. To most of these courts, the construction of that phrase in §1325(b)(3) mandates that the generic monetary amounts extracted from each of the applicable §707(b)(2) categories become irrevocably established as the reasonably necessary expenses of any particular Chapter 13 debtor for the calculation of disposable income and that any consideration of the amounts actually being expended by a Chapter 13 debtor in a particular instance has been completely superseded and foreclosed in determining whether that debtor is required to pay money to unsecured creditors in a Chapter 13 case.[15] The courts which view the §1325(b)(3) phrase as definitional assert that the statute now requires the calculation of disposable income to be an inflexible, mechanical process of subtracting admittedly arbitrary amounts derived from §707(b)(2) as the debtor's reasonably necessary expenses, regardless of financial realities. Thus, according to this interpretation, debtors who have no housing expense at all may deduct for purposes of §1325(b) a housing expense of $1,233 derived from the §707(b) housing allowance applicable to their geographic area, thereby allowing the debtors to shield and retain the $1,233 allowance from creditors. *In re Farrar-Johnson*, 353 B.R. 224, 230 (Bankr. N.D. Ill. 2006). *Accord, In re Morgan*,

---

2007). Thus, absent binding precedent, the Court will construe the statute with case citations held to a minimum.

[15] *See, e.g., In re Briscoe*, 374 B.R. 1, 5 n. 2 (Bankr. D.D.C. 2007).

374 B.R. 353 (Bankr. S.D. Fla. 2007). Similarly, a Chapter 13 debtor may deduct from the reach of creditors a transportation ownership expense for a vehicle that is owned free and clear of any encumbrance or payment obligation. *In re Roberts*, ___ B.R. ___, 2008 WL 542503 (Bankr. D. Conn. Feb. 28, 2008). Finally, in taking this interpretative principle to its natural conclusion, it has been held that a secured debt authorized to be deducted under §707(b)(2)(A)(iii) automatically grants a Chapter 13 debtor a deduction of that amount in the disposable income calculation and the allowance of that deduction absolutely prohibits any examination of whether the debtor's retention of that asset is reasonable and necessary, even when it is admitted that the choice to retain that asset could not survive such scrutiny. *In re Austin*, 372 B.R. 668 (Bankr. D. Vt. 2007).

Thus, when confronted with the particular issue raised in this case – the deduction of secured debt payments by Chapter 13 debtors when the underlying collateral is being surrendered – the courts which interpret the §1325(b)(3) language as defining the precise amount of expenses of every Chapter 13 debtor regardless of circumstances would look to the language of §707(b)(2)(A) which authorizes, in relevant part, the deduction under clause (iii) of the "debtor's average monthly payments on account of secured debts . . . [including] the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." While the interpretation of this subsection of §707(b)(2)(A) has also generated its fair share of controversy, this Court is of the opinion that, as applied in the Chapter 7 context for which it was designed, the correct interpretation of §707(b)(2)(A)(iii) was recently expressed in *In re*

*Lindstrom*, 381 B.R. 303 (Bankr. D. Colo. 2007), in which the Court observed that:

> [T]he plain meaning of "scheduled as contractually due" refers to two things: (1) a scheduled secured debt and (2) a debt on which, as of the date of filing, payments remain contractually due in each of the 60 months following the petition date. The Statement of Intention is not a "schedule" of debts. And while it speaks to the debtor's future intentions in regard to property, it does not address whether a debtor is contractually *obligated* to pay a debt, only whether he *intends* to pay the debt. Many of the cases addressing this issue focus on whether "scheduled as" should be given its dictionary meaning of "to plan for a certain date," or its common usage in bankruptcy, meaning those assets and liabilities identified on a debtor's bankruptcy schedules. The Court finds this to be a distinction without a difference since, under either definition, "scheduled as" is modified by "contractually due." Listing a debt on bankruptcy schedules or even on a statement of intent does not eliminate a debtor's contractual liability. Thus, whether a secured debt is "scheduled as" due in the dictionary sense, or is listed on bankruptcy schedules as debt owed by the debtor, the key determination is whether that debt was contractually due on the petition date. . . . In addition, both terms "scheduled" and "contractually due" in §707(b)(2)(A)(iii)(I) are modified by the phrase "in each month of the 60 months following the date of the petition[.]" This phrase does not require that a debtor actually pay the debt in each of the 60 months post-petition. Rather, when read in context of §707(b)(2), the clause simply operates to define the period over which the debtor's "contractually due" payments are averaged.

*Lindstrom*, 381 B.R. at 307 (emphasis in original).[16] Thus,

> [t]he plain language of §707(b)(2)(A)(iii) requires the debtor to deduct the

---

[16] *Lindstrom* outlines the various interpretations of §707(b)(2)(A)(iii)(I) more thoroughly than quoted here and cites to the initial cases underscoring its conclusion including the decisions in *In re Walker*, 2006 WL 1314125 (Bankr. N.D. Ga. 2006) and *In re Nockerts,* 357 B.R. 497 (Bankr. E.D. Wis. 2006).

> amount due under her contracts for secured debt regardless of whether she intends to redeem, reaffirm or surrender the property. If Congress had intended otherwise, it could easily have said so . . . . [T]he debtor must fill out Form B22A as of the petition date, and on that date her mortgage payments were "due" under the contract whether the debtor planned to make them in the future or not. The filing of a bankruptcy petition does not abrogate that obligation. . . . Therefore, the debtor's mortgage payments are "due" under the contract for the next 60 months and may be deducted from her monthly income under §707(b)(2)(A)(iii). . . .

*In re Randle*, 358 B.R. 360, 363-65 (Bankr. N.D. Ill. 2006), *aff'd Randle v. Neary (In re Randle)*, 2007 WL 2668727 (N.D. Ill., July 20, 2007).

*Lindstrom* and *Randle* are Chapter 7 cases in which courts are engaged in an exercise of statutory interpretation for the purpose of determining whether a presumption of abuse should apply to a debtor's effort to obtain a discharge through the filing of a Chapter 7 petition. However, for those courts who interpret the language of §1325(b)(3) as mandating the insertion of those §707(b)(2) allowances as a Chapter 13 debtor's reasonably necessary expenses in a determination of disposable income, then the deduction of monthly payments for secured debts for which the collateral is actually being surrendered must be authorized on line 49 of Form 22C because the deduction of that payment would be allowed in a Chapter 7 context under §707(b)(2)(A)(iii). However, the language which governs the use of those allowances in a Chapter 7 context differs from that which invokes the application of those allowances in a Chapter 13 context. While §707(b)(2)(A)(i) directs that abuse determinations begin by reducing current monthly income "by the amounts determined under clauses (ii), (iii), and (iv). . .,"

§1325(b)(3) states that reasonably necessary amounts "shall be determined *in accordance with*" those §707 allowances.

That distinction in grammatical structure led this Court, in the early days after the adoption of BAPCPA, to express its initial view that the fact that reasonably necessary expenses to be expended by a Chapter 13 debtor would now be "determined in accordance with" §707(b)(2) meant that the means test standards would now be "used in the Chapter 13 context to gauge the necessity and reasonableness of expenses in specified categories by comparing them to financial standards devised by the Internal Revenue Service in those categories." *In re Sparks*, 360 B.R. 224, 228 (Bankr. E.D. Tex. 2006). *Sparks* further specified that:

> [i]n applying these §707(b) standards only to Chapter 13 debtors whose current monthly income exceeds the median income of persons in their state, Congress implicitly recognized that, without the invocation of appropriate limitations, a higher level of monthly income enjoyed by a Chapter 13 debtor would likely be consumed in a lifestyle characterized by a higher level of monthly expenditures.  Thus, in an effort to insure that a significant payment to unsecured creditors would actually be made by those persons whose monthly income reflected such an ability, Congress incorporated the §707(b) standards into §1325(b)(3) as a statutory ceiling for those enumerated expense categories, thereby precluding the allowance of any improper discretionary spending by higher income debtors in Chapter 13.

*Id*.  In other words, this Court initially concluded that the phrase "determined in accordance with" as used in §1325(b)(3) was a phrase which utilizes the §707(b)(2)

standards *to limit, not to define*, the amounts which could be held to be "reasonably necessary to be expended for the maintenance and support of the debtor." While repeatedly being called upon to interpret the BAPCPA provisions in the light of the evolving jurisprudence has forced most bankruptcy courts (including this one) to reconsider at times their initial interpretations of these often-confusing statutory changes, a review of the evolving jurisprudence on this point has convinced this Court in this instance that its early construction of the statute in *Sparks* represents the most sound construction of §1325(b)(3).[17] The statute requires that the determination of what constitutes reasonable and necessary expenses must be "in accordance with" the §707(b)(2) standards, meaning that a court is not permitted to violate those given standards in making its determination. It establishes parameters for that determination and supplants a court's determination only if the given standard is violated. As the Court found in *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007):

> [§1325(b)(3)] should be interpreted as offering a further guideline for ensuring that the expenses claimed by an above-median-income debtor are reasonably necessary. Put differently, section 1325(b)(3) imposes the same requirement upon an above-median-income debtor as it does upon all other debtors: amounts claimed as expenses under section 1325(b)(3) must in fact be ultimately expended. However, section 1325(b)(3) imposes upon an above-median-income debtor the further requirement that all planned expenditures must also agree with the expense limitations of sections

---

[17] This is true regardless of the position one might take in the "applicable vs. actual" controversy derived from the language of §727(b)(2)(A)(ii)(I) or the debate regarding the applicability of interpretative guidance from IRS materials.

> 707(b)(2)(A) and (B). If that debtor's planned expenses exceed what is permitted, then the debtor must conform his section 1325(b) deductions by reducing them to the amounts allowed by those subsections. On the other hand, the converse is not true, for if the debtor's planned expenses are less, then his section 1325(b) deductions must still be that lesser amount because that is all that he in fact plans to expend. . . . Section 1325(b), not section 707, ultimately controls the determination of disposable income for purposes of plan confirmation under Chapter 13, and that section permits Debtors to deduct only those expenditures that are reasonably necessary for their future support and maintenance.

*Id.* at 730.

By focusing proper attention to the group preposition "in accordance with," which modifies the term "determined" in the operative phrase, §1325(b)(3) is construed in a manner which is grammatically defensible and is actually consistent with the overall goal of Chapter 13 — the enhancement of the payment distribution to be received by creditors while achieving an effective financial rehabilitation of the debtor.[18] Such a construction also precludes the anomalous and perniciously discriminatory result in which a below-median income debtor is required to tender all disposable income to the payment of unsecured creditors while an above-median income debtor, who supposedly is being subjected to greater scrutiny by the imposition of the means test standards, is permitted to shield substantial amounts of income from creditors by claiming deductions that have absolutely no root in financial reality.

---

[18] Even the courts that have earnestly adopted the definitional approach often acknowledge regret that such a construction is counterproductive to the acknowledged rationale of the disposable income requirement and contrary to the pronounced intent of Congress. Thankfully the number of bankruptcy decisions which note that juxtaposition with a sense of self-righteous glee seems to be decreasing.

Thus, while the Court agrees with the Trustee's interpretation of §707(b)(2)(A)(iii) and the deduction of amounts "scheduled as contractually due" in determining whether abuse should be presumed in a Chapter 7 context, the application of that strict statutory interpretation is tempered in the Chapter 13 context. Section 1325(b)(3) does not mandate the allowance of that expenditure in a Chapter 13 case nor does it statutorily bind this Court to ignore financial reality and allow an above-median income debtor to deduct an expense amount from her disposable income which admittedly will not be incurred in the future and therefore will not be "reasonably necessary to be expended for the maintenance or support of the debtor."

Accordingly, the Court concludes that a Chapter 13 debtor is not permitted to take a deduction of a monthly payment amount on line 47 of Form 22C on a debt secured by collateral which is being surrendered in a Chapter 13 plan. In this case, the Debtor's correct deduction amount on line 47 is $1,372.93, which becomes a component of the aggregate deduction amount on line 52, which when correctly calculated in this case totals $5,769.43. This leaves the Debtor with a disposable income calculation on line 58 of $455.77 which, when multiplied by the applicable commitment period of 60 months, requires that payments totaling $27,346.20 be tendered to the plan for the benefit of unsecured creditors in this case. Because the Debtor's proposed plan provides only an aggregate distribution of $2,862.40 to that class of claimants, confirmation of the Debtor's proposed Chapter 13 plan must be denied.

Therefore, in light of this initial denial of confirmation, the Debtor shall file a new

Chapter 13 plan within thirty (30) days of the date of this Order and, in the event that the Debtor fails to do so, absent a further order of the Court extending such deadline for cause shown, or in the event that the Debtor thereafter fails to confirm such new Chapter 13 plan upon consideration by this Court under its normal procedures, this Chapter 13 case shall be dismissed, pursuant to §349(a) of the Bankruptcy Code, without further notice or hearing and with prejudice to the rights of the Debtor to file a subsequent petition under any chapter of Title 11, United States Code, for a period of one hundred twenty (120) days from the entry of the order of dismissal.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[19] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 04/25/2008

*Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[19] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.